CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 19 2012

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil Action No. 7:12cr00057 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| DEMARCUS MANDELL BROWN, | ) | |
| | ) | By: Samuel G. Wilson |
| Defendant. | ) | United States District Judge |

The defendant, Demarcus Mandell Brown, is charged with three counts of distribution of cocaine and one count of possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and possession by a convicted felon of a firearm that had been shipped or transported in interstate or foreign commerce, in violation of 18 U.S.C. § 922(g)(1). Brown has moved to suppress evidence from the search of his residence. He contends that the search warrant authorizing the search was based on an intentionally or recklessly false affidavit. Having held two evidentiary hearings, the court finds that the search warrant affidavit contains neither an intentionally false statement nor one made in reckless disregard for the truth. Accordingly, the court denies Brown's motion to suppress.

I.

On June 16, 2012, Roanoke police detective Kelly C. Jennings used a confidential informant to make a controlled buy of cocaine in Roanoke. Four days later, Jennings found the same type of vehicle used in the cocaine deal, a white Dodge Charger, in the Bluemont Apartments' parking area. Jennings checked the vehicle's plates and found that it was a rental from Avis Rental Car. Avis staff informed Jennings that Demarcus Brown rented the vehicle,

and they gave Brown's address as 1536 Bluemont Avenue, Apartment 138, Roanoke, Virginia. The Bluemont Apartment complex is situated on Bluemont Avenue, a one-way street that accommodates on-street parking. Brown's apartment building is a large structure with six interlocking wings. Each wing (which consists of numerous apartments) has its own front and rear doors.

Jennings then obtained a Division of Motor Vehicles photograph and showed it to the confidential informant, who "positively identified" it to be a photo of the person from whom the informant had obtained cocaine. In an effort to discern where Brown was storing cocaine, Detective Jennings arranged for his informant to make a second controlled buy on June 21, 2012. Jennings first drove through the Bluemont Apartment complex to find out whether Brown's rental vehicle was parked there. When he determined that it was not, he immediately picked up his informant and called another detective, Gwendolyn Crotts, who had a description of Brown and Brown's Dodge Charger rental vehicle. Jennings planned to have his informant arrange another purchase from Brown so that Crotts could surveil Brown's apartment building to see if Brown returned there to pick up cocaine for the sale.

Crotts drove down Bluemont Avenue, past Brown's apartment, and noted that Brown's vehicle was not present in the parking area. In an effort to avoid detection, she parked her vehicle such that she could see Brown's apartment building, but not the parking area. Meanwhile, the informant placed a monitored call to Brown. Brown indicated to the informant that he had to retrieve the cocaine. Jennings then called Crotts to let her know that Brown would soon arrive at the Bluemont Apartments. A short while later, Crotts saw Brown exit or pass in front of the building wing that is perpendicular to the wing housing Brown's apartment. (That wing's address is 1540, and Brown's wing is numbered 1536.) Crotts exited her vehicle for a

view of the parking area and saw Brown walk to his white Dodge Charger (which was then present in the parking area) and drive away. Crotts called Jennings and reported that Brown had arrived and was leaving.

Based on the information Jennings had accumulated, either that day or the next, Jennings prepared an affidavit and an application for a warrant to search 1536 Bluemont Avenue, Apartment 138. The affidavit detailed the first controlled buy and how, after arranging to meet the informant for the second controlled buy, Brown returned to his apartment complex before meeting the informant to once again sell the informant cocaine. The affidavit also stated:

> In the past 72 hours, your affiant conducted another controlled purchase of cocaine from Demarcus Brown. Prior to the purchase, vice detectives conducted surveillance at the building to be searched, and the white Dodge Charger was not present. CI was present with your affiant, where they made a phone call to Demarcus Brown and agreed to purchase a quantity of cocaine. Shortly after the agreement was made, vice detectives observed Demarcus Brown arrive at the building to be searched and quickly enter, then exit the building. Your affiant then observed Demarcus Brown arrive at the agreed location and conducted the exchange of cocaine with CI. CI then turned over the substance to your affiant, which field tested positive for cocaine. During the transaction, Demarcus Brown made statements to CI that indicated that he had access more cocaine. CI is a self-admitted cocaine user and is familiar with the appearance and packaging of cocaine.
>
> Your affiant knows, through training and experience, that narcotics distributors who travel to distribute their narcotics, commonly keep their supply of narcotics in a central location, while retrieving only the specific requested amount for each transaction from their storage location.
>
> The activity observed by your affiant and vice detectives, of Demarcus Brown arriving and immediately exiting his residence while on his way to conduct a narcotics transaction, is consistent with someone who stores their supply of narcotics inside their residence.
>
> A search of the residence is requested to locate additional evidence for the offense of distribution of cocaine.

(Pl's. Mot. to Suppress Ex. 1, ECF No. 16-1.)

The magistrate found probable cause and issued the warrant on June 22nd. Detective Jennings then planned for a third control buy, this time with a search of Brown's apartment and Brown's simultaneous arrest at a different location. Jennings coordinated the third buy, the arrest, and the search so that Brown would not be at the apartment to destroy drugs or endanger officers conducting the search. The third buy occurred as planned on July 27th; officers moved in and arrested Brown, while other officers simultaneously searched Brown's apartment, where they located cocaine, a digital scale, Pyrex cooking devices, a firearm, ammunition, and currency.

A federal grand jury returned a six-count indictment against Brown for drug trafficking and firearm violations.

## II.

Brown maintains that the court should suppress evidence from the search of his apartment. He argues that Jennings obtained the warrant for that search by recklessly or intentionally stating that "vice detectives observed Demarcus Brown arrive at the building to be searched [1536 Bluemont Avenue] and quickly enter, then exit the building," when, in fact, vice detectives did not see Brown enter any building and only saw him exit building 1540.[1] The court has conducted two hearings on the matter and heard testimony from Jennings, Crotts, and Brown. Under the circumstances, the court finds the detectives' testimony credible, concludes that Jennings' affidavit contains no recklessly or intentionally false statements, and, accordingly, denies Brown's motion to suppress.

---

[1] Brown makes two additional arguments, both of which lack merit. First, Brown addresses the second-to-last paragraph of the affidavit, which he reads as Jennings claiming that he personally observed Brown enter into and exit the residence at 1536 Bluemont. A plain reading of the affidavit as a whole shows that Jennings made no such claim. Second, Brown claims he never "made statements to [the confidential informant] that indicated that he had access to more cocaine," as Jennings stated in the search warrant affidavit. At the second hearing, Jennings clarified the statement by explaining that Brown told the confidential informant to "call" him, and that drug dealers commonly use such statements to indicate a ready supply of drugs. The court credits Jennings' explanation and finds no hint of reckless or intentional falsity.

4

In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that under certain limited circumstances a defendant may attack a facially sufficient affidavit. Though there is a strong "presumption of validity with respect to the affidavit supporting the search warrant," Franks, 438 U.S. at 171; United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990), the defendant may establish by a preponderance of the evidence that the affiant intentionally, or with reckless disregard for the truth, included a false statement in the search warrant affidavit, Franks, 438 U.S. at 156. If the defendant makes that showing, and with the affidavit's false statements set aside, the affidavit's remaining content does not establish probable cause, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Id. Franks also applies when the affiant omits material facts "with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." United States v. Reivich, 793 F.2d 957, 961 (8th Cir. 1986). In either case, mere negligence in recording facts on a search warrant affidavit is not enough. Colkley, 899 F.2d at 301.

Here, the court discerns no basis for voiding the search warrant and excluding the fruits of the search. Crotts testified that Brown's white Dodge Charger was not in the parking area when she arrived at his apartment complex, but that soon after parking her vehicle she saw Brown leaving or walking in front of building 1540. She exited her vehicle, moved to a better vantage point, and saw Brown walking towards his white Dodge Charger, which had by then appeared in the parking area. Crotts reported to Jennings that she "had seen Mr. Brown come from [building 1540], that it appeared that he came from . . . in front or behind 1540, and [had] gone to the white Charger and left the premises." Given that Brown's apartment building is a single, large structure consisting of six interlocking wings, and that wings 1536 and 1540

5

physically join one another, Jennings' interpretation of Crotts' report (that "vice detectives observed Demarcus Brown arrive at the building to be searched and quickly enter, then exit the building") may have been flawed, perhaps even negligent, but it was not intentionally or recklessly false.

Mere negligence is, of course, not enough. Colkley, 899 F.2d at 301. Indeed, Jennings' "acts fell far short of the level of flagrant police action Franks is designed to prevent." Id. Because Brown has not demonstrated by a preponderance of the evidence that Jennings intentionally made false statements or displayed a reckless disregard for the truth in the search warrant affidavit, Brown has not overcome the strong presumption of validity that the court affords to such affidavits.[2] Franks, 438 U.S. at 155–56.

---

[2] At the first hearing, the court held Brown's Franks motion under advisement and conducted a full hearing on all the factual matters in dispute. It is unnecessary to reach the issue of whether, after striking the subject of the alleged falsity or reckless disregard, the affidavit would contain sufficient content to support a finding of probable cause, Franks, 438 U.S. at 171–72, because the court finds that the affidavit did not contain intentionally or recklessly untruthful statements.

However, the court does note that Jennings testified at the second evidentiary hearing and on cross-examination that he believed he had probable cause to support a search warrant for Brown's apartment—even without Crotts' surveillance—before the second controlled buy. His belief may not be far off the mark. The evidence in general (and more narrowly, the affidavit) shows that Brown was selling cocaine; that he was residing at 1536 Bluemont Avenue, Apartment 138, Roanoke, Virginia; that he was driving rental vehicles when dealing drugs; that he was returning home and parking his rental vehicle (an instrumentality of his offense) in a nearby parking space; and that these circumstances were temporally close. Under the circumstances, persuasive authority seems to support Jennings' belief that he could have demonstrated probable cause without Crotts' surveillance. See United States v. Burton, 280 F.3d 91, 103 (3d Cir. 2002) ("[I]f there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains some evidence of the crime increases, and that, with regard to drug crimes in particular, evidence is likely to be found where the [drug] dealers reside." (internal quotations and citations omitted)); United States v. Hoffman, 519 F.3d 672, 676 (7th Cir. 2008) (finding that probable cause for search of a drug dealer's residence may be warranted even without any evidence that drug-related activity has taken place at the residence); United States v. Miggins, 302 F.3d 384, 393–94 (6th Cir. 2002) (explaining that it is reasonable to infer a drug dealer stores narcotics and equipment used in the distribution of narcotics at his home, even though no drug trafficking is observed there). However, the court finds the question to be hypothetical here and does not answer it here.

## IV.

For the foregoing reasons, the court denies Brown's motion to suppress.

**ENTER**: December 19, 2012.

_____
UNITED STATES DISTRICT JUDGE